

# UNITED STATES DISTRICT COURT
## IN THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

RHONDA McKENZIE, )
Plaintiff )
)
-vs- )  Case No:  **2 13CV 030**
)
PEKIN INSURANCE COMPANY, )
INC. )
)
Defendant. )

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

COMES NOW Plaintiff, Rhonda McKenzie, by counsel, WRUCK PAUPORE PC, and for her Complaint for Damages and Declaratory Relief, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.　　Plaintiff, Rhonda McKenzie, is an individual and is now, and at all times mentioned in this Complaint was, a resident of the State of Michigan and a Michigan citizen.

2.　　Defendant Pekin Insurance Company, Inc. ("Defendant" or "Pekin") is a company incorporated in the State of Illinois, an Illinois resident and citizen, and maintains its principal place of business in Pekin, Illinois.

3.　　Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000 (seventy-five thousand dollars).

4.　　Venue is proper in the Northern District of Indiana.

## COMMON ALLEGATIONS

### *The Pekin Insurance Policy*

5.    Plaintiff restates and incorporates by reference Paragraphs 1 through 4 as though fully set forth here.

6.    Defendant Pekin is a company engaged, *inter alia*, in providing property and casualty insurance to businesses and property owners and writes policy lines in the State of Indiana.

7.    Defendant Pekin issued Business Owners Policy Number 00BU46434-0 effective October 9, 2008 through October 9, 2009 ("Policy").

8.    A true and certified copy of the Policy is attached hereto as **Exhibit A.**

9.    The Policy provides coverage to Portage Gas & Food, Inc., 6264 Melton Rd., Portage, Indiana 46368-1262 as the Named Insured.

10.    The Policy, as amended, identifies "Chicago Petromarts Mid-West Oil Company," 9739 Irving Park Rd., Schiller Park, IL 60176 ("Mid-west Oil") as "Owners-Land Leased" and expressly endorses Mid-West Oil as an Additional Insured as owner of the subject property from whom the property located at 6264 Melton Rd., Portage, Indiana 46368-1262 ("subject property") is leased.

11.    Mid-west Oil is an additional insured under the Policy with respect to "liability arising out of the ownership, maintenance or use of that part of the land leased" to Portage Gas & Food, Inc.

12.    The Policy provides Limits of Insurance in a General Aggregate Limit of $2,000,000.

2

## *Rhonda McKenzie's February 20, 2009 Incident and Plaintiff's Injuries*

13. On or about February 20, 2009, Portage Gas & Food, Inc. operated a business selling gasoline and sundries at its business located at the subject property. On or about this date, Plaintiff was a customer and business invitee at Portage Gas & Food, Inc., a/k/a/ Marathon, ("Portage Gas & Food").

14. Plaintiff, while exercising due care and caution for her own safety, was pumping gasoline into her vehicle and sustained a falling accident when she slipped on black ice which had accumulated on the ground under the covered fueling area of the subject property.

15. As a result of the fall, Plaintiff incurred serious injuries, including a catastrophic ankle fracture requiring complex surgical stabilization. Plaintiff has, to date, incurred medical bills in an amount exceeding $80,000 and has suffered permanent disabilities as the result of the incident.

16. Plaintiff's injuries were the proximate result of unreasonably dangerous and unsafe conditions at the location of the subject property, including the unreasonably unsafe structure of the surrounding area, including the roof-top area intended to protect the fueling area from inclement weather. The unsafe and unreasonable conditions included, but were not limited to:

    (a)    the structural area in and about the fueling location where the accident occurred was not constructed in accordance with all reasonable architectural and construction standards;

    (b)    the roof-top area intended to cover the immediate area where Plaintiff fell was not properly maintained and was allowed to leak, allowing for the

unreasonable accumulation of ice under the covered fueling area where Plaintiff fell;

(c)   a failure to provide adequate lighting in the fueling area where Plaintiff was injured;

(d)   a failure to provide adequate warnings of unsafe conditions in the areas surrounding the fueling area;

(e)   a failure to reasonably and timely remove accumulations of ice and/or snow at the premises and take appropriate precautions to prevent its accumulation; and/or

(f)   other failures to exercise due care with respect to the construction and maintenance of the subject property.

17.   Portage Gas & Food, Inc. has operated its business under a variety of assumed names, including "Marathon" and "Portage Marathon," without filing assumed name documentation with legal entities as required.  In conducting its pre-suit investigation, it was discovered that Portage Gas & Food, Inc. may have been operating under another assumed name, Mid-West Oil, without filing an assumed name certificate.

### Plaintiff's State Court Action and Pekin's Misrepresentation and Concealment

18.   Plaintiff filed suit against Portage Gas and Food, Inc. a/k/a Marathon in Porter County, Indiana Superior Court ("State Court Action") on or about December 18, 2009.

19.   Defendant Pekin, as the insurer of Portage Gas & Food, Inc., asserted its right, and accepted its duty, to defend Plaintiff's State Court Action pursuant to the Section A(1)(a) of the Policy's Businessowners Liability Coverage Form.  Pursuant to this duty, Defendant Pekin

retained counsel for the defense of the matter ("Pekin counsel") and retained oversight and control of the defense pursuant to its practice and the Policy provisions.

20. Counsel retained by Defendant Pekin for the defense of the State Court Action acted at all times relevant hereto as agent and representative for Pekin in all matters related to the defense of that action.

21. Plaintiff served written discovery to Pekin counsel on or about December 29, 2010 ("Written Discovery").

22. This discovery was expressly calculated to determine whether "Mid West Oil" was a separate and discrete entity from Portage Gas & Food, Inc. and whether there was any entity other than Portage Gas & Food, Inc. with an ownership or other interest in the subject property.

23. Written Discovery specifically sought information regarding, *inter alia*, whether (1) there was any entity other than Portage Gas & Food with any interest in the subject property; (2) to determine whether any other entities existed with potential duties to maintain the subject premises; (3) and to obtain an actual copy of any insurance policy applicable to the State Court Action to determine the availability of benefits and to properly assess litigation and settlement strategy.

24. Plaintiff served such Interrogatories, *inter alia*, for the express purpose of determining whether any additional parties should be named as defendants in Plaintiff's State Court Action prior to the nominal expiration of any statute of limitations on February 20, 2011.

25. Responses to such Interrogatories were due under the Indiana Rules of Trial Procedure on or before January 29, 2011.

26.     Pekin, its agents and representatives did not disclose the Policy on or before the required January 29, 2011 deadline and its agents and/or representatives did not otherwise respond to Written Discovery.

27.     On or about February 9, 2011, Pekin counsel contacted Plaintiff's counsel and requested additional time to respond to the Written Discovery despite the earlier passage of the response deadline.

28.     Plaintiff responded through counsel on that same date and explained the importance of immediate response in light of the statute of limitations and further noted that Plaintiff was agreeable to allowing additional time to respond only if Plaintiff was immediately provided with information necessary to determine whether other potentially responsible parties needed to be named prior to the nominal statute of limitation deadline of February 20, 2011.

29.     On Thursday, February 10, 2011, Pekin counsel expressly and affirmatively represented to Plaintiff's counsel that Portage Gas & Food, Inc. was the sole owner of the subject premises and had the sole duty to maintain the premises at the time of Plaintiff's February 20, 2009 injuries.

30.     This representation was confirmed through written correspondence.

31.     The representation that Portage Gas & Food, Inc. was the sole owner of the subject property was untrue at the time that it was made.

32.     Pekin possessed actual and/or constructive knowledge that its affirmative representation that Portage Gas & Food, Inc. was the sole owner of the subject property was false when made.  Pekin's Policy, in force and effect at the time of these misrepresentations, specifically acknowledged that the subject property was owned by Mid-west Oil and that Mid-West Oil was leasing said property to Portage Gas & Food, Inc. at the time of Plaintiff's injuries.

6

33.     At the time of the foregoing misrepresentations, Pekin was acting as insurer of Mid-West Oil as the acknowledged premises owner of the subject property at when Plaintiff suffered her injuries.

34.     Pekin further concealed at this time that Mid-West Oil was an additional named insured under the Policy and that the Policy had an Aggregate Limit of Liability of $2,000,000.

35.     Pekin subsequently admitted, through counsel on or about April 13, 2012, that the Policy lists Chicago Petromarts Mid-West Oil Company as an additional insured on the Policy. *(See* **Exhibit B**).

36.     Based on and relying upon the express misrepresentation of Pekin by its representative, employee, agent, and/or attorneys in February 2011, Plaintiff granted a 30-day extension of time to provide answers to Written Discovery, including for production of the Pekin Policy which directly contradicted the express and/or implied misrepresentations of Pekin's counsel in February 2011.

37.     Pekin's counsel again did not respond to Written Discovery during the agreed to extended period and did not produce the subject Pekin Policy disclosing the true ownership of the subject property and the $2,000,000 General Aggregate Limits.

38.     After repeated subsequent demands by Plaintiff, Pekin's counsel purported to serve answers to the Written Discovery on or about May 26, 2011. However, Pekin's counsel did not produce the Pekin Policy identifying Mid-West Oil as owner of the subject property and a Pekin insured.

39.     Sworn answers to Interrogatories signed by Pekin's counsel continued to conceal that the subject property was owned by Mid-West Oil Co. and leased to Portage Gas & Food, Inc. Such answers deliberately misrepresented that the property was solely owned by Portage

7

Gas & Food, Inc., despite Pekin's actual and/or constructive knowledge to the contrary and despite Mid-West Oil Co. expressly being insured by Pekin as the owner and lessor of the subject property.

40.     Pekin's employees, agents, representatives, and/or attorneys further withheld production, as required, of the Policy that expressly identified Mid-West Oil as the premises owner, landlord, and an insured under its Policy.

41.     Pekin's counsel indicated for the first time on August 11, 2011 that applicable insurance was provided by Pekin Insurance Company. Pekin's counsel at this time represented that the insurance limits of the Pekin Policy were only $1,000,000, contrary to the $2,000,000 General Aggregate Limit provided by the Policy. Pekin's counsel did not disclose the property ownership by Mid-West Oil Co., its status as a Pekin insured as owner of the subject property, or correct its prior misrepresentation.

42.     Pekin further concealed, directly and/or through its employees, agents, representatives, and/or attorneys, the existence of Medical Expenses coverage which provided Plaintiff with benefits directly under the Policy.

43.     Specifically, the Policy Businessowners Liability Coverage Form Section A.2 provides for payment of certain Medical Expenses for bodily injury incurred on the subject property, regardless of fault of the insured.

**Mediation of the State Court Action Under False Pretenses**

44.     On or about January 19, 2012 Plaintiff proceeded to court-ordered Mediation in the State Court Action. Plaintiff engaged in such mediation under the pretense that (1) Portage Gas & Food, Inc. was the sole owner of the subject premises; (2) that there was only $1,000,000 of total aggregate limits of liability insurance; and (3) that there was no Medical Expenses

8

coverage requiring payment of Plaintiff's medical bills incurred at the subject property irrespective of fault or liability.

45.    The State Court Action failed to resolve at mediation.

46.    On or about March 21, 2012, Pekin's counsel sent to Plaintiff a copy of a Retail Facility Lease Agreement.

47.    This was the first time that the existence of a Retail Facility Lease Agreement was disclosed to Plaintiff.

48.    A true and accurate copy of the Retail Facility Lease Agreement is attached hereto as **Exhibit C.**

49.    The Retail Facility Lease Agreement confirms that Portage Gas & Food, Inc. was not the owner of the subject premises as of February 20, 2009, but was instead the lessee of the premises from "Mid-West Oil," the owner of the subject property. The Retail Facility Lease Agreement set forth information directly contrary to prior representations of Pekin's counsel that Portage Gas & Food, Inc. was the owner of the subject property and also contradicted the Interrogatories signed by Pekin's counsel which were not amended or corrected at any point prior to this disclosure or when the disclosure was made.

50.    At all times prior to March 21, 2012 Defendant Pekin, its agents, insurers, representatives, or attorneys, falsely maintained that the subject property was owned by Defendant Portage Gas & Food, Inc.

## Filing of First Amended Complaint in State Court Action
## Naming Mid-West Oil as Defendant

51.    Upon learning of the misrepresentation regarding the ownership of the subject premises and concealment of Mid-west Oil's ownership interest by Pekin and others, Plaintiff

9

sought leave to file her First Amended Complaint in the State Court Action on March 30, 2012, in order to name, *inter alia*, Mid-West Oil Co. as a party defendant. Portage Gas & Food, Inc., through counsel retained by Pekin, opposed the amendment on the grounds, *inter alia*, that the amendment was untimely claiming that the statute of limitations had expired as to Mid-West Oil Co.. Such claims were made notwithstanding the fact that any expiration of the statute of limitations was a direct and proximate result of Pekin's concealment and misrepresentation regarding the existence of Mid-West Oil Co., its insured, and Mid-West Oil Co.'s ownership of the subject property as its insured.

52.     The Court granted Plaintiff's Motion for Leave to Amend, over objections, on or about October 19, 2012.

53.     Separate counsel for Mid-West Oil Co. has nevertheless indicated counsel's intentions to seek dismissal of Plaintiff's causes of action against Mid-West Oil Co. on statute of limitations grounds.

## Initial Disclosure of the Pekin Policy and The Actual Insurance Coverage

54.     Upon learning of the concealment and misrepresentation regarding ownership of the subject property described herein, Plaintiff again demanded that she be provided with a certified copy of the Policy.

55.     On or about March 30, 2012 Plaintiff was provided with a copy of the Policy for the first time.

56.     The Policy confirms that "Chicago Petromarts Mid-West Oil Company," located at 9739 Irving Park Road, Schiller Park, Illinois, is the owner of the subject premises and lessor of the property to Portage Gas & Food, Inc.

10

57. The Policy confirms that "Chicago Petromarts Mid-West Oil Company," located at 9739 Irving Park Road, Schiller Park, Illinois, is named as one of Pekin's insureds via amendment to the subject Policy.

58. The status of "Chicago Petromarts Mid-West Oil Company" as an additional insured under the Policy was subsequently confirmed by Pekin counsel via correspondence of April 13, 2012, a true and accurate copy of which is attached hereto as **Exhibit B.**

59. "Chicago Petromarts Mid-West Oil Company," located at 9739 Irving Park Road, Schiller Park, Illinois, is one and the same as "Mid-West Oil," located at 9739 Irving Park Road, Schiller Park, Illinois, and identified as the owner if the subject property in **Exhibit C.**

60. The Policy confirms that the Limits of Insurance, General Aggregate Limit is $2,000,000, rather than the $1,000,000 represented as the limit to Plaintiff on August 11, 2011.

61. The Policy provides additional Medical Payment coverage which Pekin failed to disclose to Plaintiff for more than 3 years, requiring Pekin to make payments up to applicable limits for Medical Expenses incurred by Plaintiff as the result of her February 20, 2009 injuries, irrespective of the fault or liability of Portage Gas & Food, Inc. or Mid-west Oil Co.

62. Pekin continues to maintain that the maximum aggregate indemnity limit of insurance applicable to all claims against Mid-West Oil and Portage Gas & Food, Inc. is $1,000,000, rather than the $2,000,000 General Aggregate Limit identified in the Policy.

63. Upon information and belief, Pekin has not assumed its duty to defend Mid-West Oil Co. in the State Court Action despite its obligation under the Policy to do so.

11

## COUNT I – DECLARATORY JUDGMENT AND RELIEF

64.     Plaintiff restates and incorporates by reference Paragraphs 1 through 63 as though fully set forth here.

65.     On or about October 9, 2008, Defendant issued the Policy attached as **Exhibit A**. All protections afforded under the Policy to the named insured, additional named insureds, persons making claims under Medical Expenses coverage, and those making third-party claims against Pekin insureds were effective at the time of Plaintiff's injury.

66.     By endorsement, Schedule C of the Businessowners Liability Coverage Form of the Policy was amended to provide that Mid-West Oil Co is a named insured under the Policy with respect to "liability arising out of the ownership, maintenance, or use of that part of the land leased" to Portage Gas & Food, Inc., a fact confirmed by Pekin counsel on or about April 13, 2012 in **Exhibit B.**

67.     Businessowners Liability Coverage Form of the Policy, Section A.1. provides, in pertinent part:

### A. COVERAGES

#### 1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

12

(1) The amount we will pay for damages is limited as described in SECTION

D – LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE...

68.     Section D of the Policy further specifies that the Limits of Insurance shown in the Declarations of the Policy establish the limits that will be paid under the Policy, regardless of the number of insureds, claims made or "suits" brought, or persons or organizations making claims or bringing suits.

69.     The Policy provides Limits of Insurance, General Aggregate Limit of $2,000,000 (two-million dollars), with a limit per "occurrence" of $1,000,000. Declarations pages, **Exhibit A.**

70.     As a separately named insured under the Policy, Defendant Pekin is required to defend and indemnify Mid-West Oil Co. for any judgment entered against it in the State Court Action, subject to the limits and Supplemental Payment provisions of the Policy.

71.     Via correspondence of June 7, 2012, counsel for Pekin admits that Mid-West Oil was a covered insured under the Policy for allegations arising out of Plaintiff's falling injury at the subject property on February 20, 2009. A true and accurate copy of this correspondence is attached as **Exhibit D.**

72.     Defendant Pekin is separately and independently liable to defend and indemnify Portage Gas & Food, Inc. in the State Court Action for any judgment entered against it, subject to the separate "occurrence" limit and Supplemental Payment provisions of the Policy.

73.     Plaintiff's damages in the State Court Action are expected to exceed the $1,000,000 and $2,000,000 occurrence and aggregate limitations of the Policy, respectively.

74. Plaintiff maintains that she incurred injuries by the negligent acts and breach of duties of Mid-West Oil Co. several and independent from those acts of negligence and duties owed by Portage Gas & Food, Inc. Such several and independent breach of duties and acts of negligence include, *inter alia*, Mid-West Oil Co.'s failure to warn of dangers and failure to reasonably construct and maintain physical structures in a safe condition at the subject premises. Such duties are separate, independent, and several from Portage Gas & Food, Inc.'s failure to reasonably prevent and remove accumulations of ice and snow or its other acts of negligence.

75. The independent and several breaches of duties and acts of negligence of such entities constitute independent causes Plaintiff's injuries and therefore constitute separate occurrences as defined by the Policy and applicable law.

76. Defendant Pekin maintains a variety of unsupported positions regarding this fact, thus creating an actual case and controversy.

77. Specifically, defendant Pekin has maintained, *inter alia*, that:

    (a)    it will not defend Midwest Oil Co. in the State Court Action;

    (b)    it is not contractually obligated to defend Midwest Oil Co. for any judgment entered in the State Court Action;

    (c)    it is not contractually obligated to indemnify Midwest Oil Co. for any judgment entered against it in the State Court Action; and/or

    (d)    to the extent Mid-West Oil Co. is entitled to indemnification in the State Court Action, any judgment arising from several independent acts of negligence by Mid-West Oil Co. and several independent acts of negligence of Portage Gas & Food, Inc. all remain subject to a single

14

$1,000,000 "occurrence" limit under the Policy rather than the $2,000,000 general aggregate limits provided by the Policy.

78.     Defendant Pekin's positions and conduct are contrary to its obligations under the Policy contract and established law.

79.     Defendant Pekin is obligated under the Policy to provide a defense and indemnity to Defendant Midwest Oil Co. To the extent Mid-West Oil Co. is found to have caused injuries to Plaintiff for breaches of duty and negligent acts that are several, separate, and/or independent from each other or those of Portage Gas & Food, Inc., such acts constitute separate "occurrences" under the Policy and implicate Pekin's insurance coverage obligations up to $1,000,000 per each occurrence limited only by the general aggregate limit of $2,000,000.

80.     Additionally, Plaintiff is a direct third-party beneficiary of the Medical Expenses provision of the Policy. This provision requires that Pekin pay, up to specified Limits of Insurance, medical expenses incurred by Plaintiff from injuries arising on the subject property, regardless of the fault of Pekin's insureds.

81.     Defendant Pekin failed to timely pay such expenses; concealed these obligations under the Policy from Plaintiff, a third-party beneficiary under the Policy; and continues to fail to meet its obligations under the Policy.

82.     Pursuant to the federal Declaratory Judgment Act, Plaintiff is entitled to and prays for a declaration and judgment that:

(a)     Mid-West Oil Co. is a separate named insured under the Policy;

(b)     Pekin is obligated to defend and indemnify Mid-West Oil Co. in the State Court Action;

15

(c)     indemnity limits applicable to any judgment against Mid-West Oil Co. in the State Court Action arising out of duties and acts of negligence by Mid-West Oil Co. which are several and independent from each other or independent acts of negligence of Portage Gas & Food, Inc. constitute separate "occurrences" under the Policy and implicate the $2,000,000 general indemnity limit of the Policy;

(d)     Plaintiff is entitled to reimbursement by Pekin of all medical expenses she has incurred as a result of the subject incident up to applicable Limits of Insurance set forth in the Policy; and/or

(e)     all other appropriate declaratory relief be granted.

WHEREFORE, Plaintiff Rhonda McKenzie respectfully requests entry of a declaratory judgment and decree against Defendant Pekin Insurance Co. as set forth hereabove, and for all other relief just and proper.

## COUNT II – BREACH OF THIRD PARTY BENEFICIARY CONTRACT

83.     Plaintiff restates and incorporates by reference Paragraphs 1 through 82 as though fully set forth here.

84.     Pursuant to the Policy Medical Expenses provision, Defendant Pekin was required to pay medical expenses to persons suffering bodily injury caused by an accident on the subject premises or arising out of the insureds' operations, regardless of fault.  Such medical expense payments were required up to the specified Limit of Insurance.

85.     Such medical expenses include but are not limited to:

(a)     first aide at the time of the accident;

16

      (b)     necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      (c)     necessary ambulance, hospital, and professional nursing services.

86.    It is undisputed that Plaintiff was injured on the subject property on February 20, 2009 and has incurred medical expenses as described hereabove and covered under the Medical Expenses provision of the Policy.

87.    Defendant Pekin failed to timely pay these benefits or disclose this coverage, as required by contract and by law, and in fact actively concealed existence of the same.

88.    Defendant Pekin, as an insurer conducting business in the State of Indiana, was required to comply with claims practices procedures established by law, requiring, *inter alia*:

      (a)     an insurer not misrepresent pertinent facts or insurance policy provisions relating to coverage;

      (b)     acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

      (c)     adopt and implement reasonable standards for prompt investigation;

      (d)     pay claims without conducting a reasonable investigation;

      (e)     attempt in good faith to effectuate prompt, fair, and equitable settlements of claims once liability has become reasonably clear; and/or

      (f)     promptly settle claims, where liability has become reasonably clear, under one portion of the insurance coverage in order to influence settlements under other portions of the insurance policies;

89.    Defendant Pekin failed to comply with these obligations when administering and managing claims due under the Policy and has failed to pay the benefits due and owing for nearly four years.

90.    As a party injured on the subject premises, Plaintiff is a contemplated and intended third-party beneficiary of the Medical Expenses provision of the Policy contract entered into between the insureds and Pekins.

91.    Defendant Pekin breached its contractual obligations to Plaintiff under the Medical Expenses portion of the Policy and wrongfully concealed the existence of the same.

92.    As a direct, consequential, and/or proximate result of Defendant Pekin's breach of contract, Plaintiff has incurred loss, including without limitation loss of funds to which she was entitled; interest and other costs incurred as the result of loss of use of the Policy benefits owed to her; disruption in her timely receipt of medical care; and emotional distress, anxiety, and/or mental anguish due to delays in medical treatment and financial disruption.

WHEREFORE, Plaintiff Rhonda McKenzie respectfully requests entry of a judgment and award of damages fully compensating her for all damages consequentially and/or proximately resulting from Defendant Pekin's Breach of Contract and for all other relief just and proper.

## COUNT III - ACTUAL AND CONSTRUCTIVE FRAUD AND MISREPRESENTATION

93.    Plaintiff restates and incorporates by reference Paragraphs 1 through 92 as though fully set forth herein.

94.    Defendant Pekin, directly and/or through its agents, representatives, and attorneys, made material representations of past or existing facts to Plaintiff, and/or made implied representations through its silence, despite its duty to disclose material facts.

18

95.     Such actual, constructive, and/or implied misrepresentations and/or material omissions included, but were not limited to:

> (a)     the fact that Mid-West Oil Co. was the actual and only owner and lessor of the subject property on February 20, 2009;
>
> (b)     the fact that Mid-West Oil Co. was an insured of Pekin as the actual owner and lessor of the subject property on February 20, 2009;
>
> (c)     the fact that Mid-West Oil Co. was entitled to insurance under the Policy as the owner of the subject property;
>
> (d)     the fact that the Policy provided both Mid-West Oil Co. and Portage Gas & Food, Inc. with $2,000,000 of aggregate insurance limits;
>
> (e)     the fact that Plaintiff was entitled to recover benefits for her medical expenses under the Policy, regardless of fault of Mid-West Oil Co. or Portage Gas & Food, Inc.; and/or
>
> (f)     the fact that Mid-West Oil Co. was responsible for the construction and maintenance of the physical property in and around the gas pumps located on the subject property.

96.     Such actual, constructive, and/or implied misrepresentations and/or material omissions of fact were false, materially deceptive, and were relied upon substantially by Plaintiff.

97.     Defendant Pekin, directly and through its employees, agents, representatives, and/or attorneys owed a duty to Plaintiff to be honest and not misrepresent or conceal material facts related to the foregoing matters.

98.     The foregoing representations, whether by act or omission, were material, false, and relied upon substantially by Plaintiff in determining Portage Gas & Food, Inc. was the sole business operator and owner of the subject property in question and thus solely liable for negligent acts contributing to Plaintiff's injuries, including failure to warn, design defects, construction defects, and/or failure to maintain the subject property.

99.     The foregoing representations, whether by act or omission, were material, false, and relied upon substantially by Plaintiff in determining applicable and available insurance proceeds, including without limitation aggregate insurance limits and Medical Expenses coverage.

100.    All of the foregoing representations and/or omissions were made by Defendant Pekin, by and through its employees, agents, attorneys, and/or representatives with actual knowledge or reckless ignorance of their falsity and/or understanding that a failure to disclose facts would induce a mistaken belief.

101.    This misrepresentations and/or material omissions by Defendant Pekin, its employees, agents, attorneys, and/or representatives were willful, wanton, reckless, the result of malice, fraud, gross negligence, and/or oppressiveness on the part of Defendant Pekin and all of them.

102.    Defendant Pekin gained advantage through the foregoing actual or implied misrepresentations and to the detriment of Plaintiff, including but not limited to:

> (a)     misleading Plaintiff into not joining Mid-West Oil as a party defendant in the State Action within the nominal statute of limitation date;
>
> (c)     precluding Plaintiff from obtaining timely insurance benefits under the Medical Expenses provision of the Pekin Policy; and

(c)    compelling Plaintiff to mediate the State Court Action under false pretenses, while concealing the actual amount and type of available insurance limits.

103.    Plaintiff is entitled to recover as compensatory damages compensation for all injuries proximately resulting from Defendant Pekin's actual, constrictive, and/or silent fraud and misrepresentation, including, without limitation, the full sum of any judgment (without regard to indemnity limits of the Pekin Policy) which might have been obtained by Plaintiff against Mid-West Oil in the State Court Action to the extent it is determined that any cause of action against Mid-West Oil Co. by Plaintiff is time-barred or precluded under any statute of limitation.

104.    Plaintiff is entitled to recover punitive damages, in an amount appropriately determined by the trier of fact, as necessary to punish Defendant Pekin and to deter if from engaging in similar future conduct.

WHEREFORE, the plaintiff demands judgment against Defendant Pekin in an amount to fully compensate plaintiff for all losses proximately resulting from the aforementioned wrongs and punitive damages in the maximum amount permitted by law.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Rhonda McKenzie demands declaratory relief, compensatory

damages, punitive damages, and final judgment in the manner and amount requested hereabove.

Respectfully submitted,

**WRUCK PAUPORE PC**

By:      */s/ **Jason J. Paupore***

Jason J. Paupore
Wruck Paupore PC
Galleria Building II, Suite 250
275 U.S. Highway 30
Dyer, Indiana 46311
Tel: (219) 322-1166
Fax: (866) 891-1166
E-mail: jpaupore@wp-law.com

Date: January 16, 2013

22